UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------x
MUHAN CUI,

               Plaintiff,

-against-

RICHARD XIA, EMMCO NQMC, L.P. and
FLEET NEW YORK METROPOLITAN
REGIONAL CENTER LLC,

               Defendants.
------------------------------------------x

**COMPLAINT**

**CIVIL ACTION NO.
19 Civ.**

**JURY TRIAL DEMANDED**

     Plaintiff, Muhan Cui, by his attorneys, Moss & Kalish, PLLC, complaining of the defendants, alleges as follows:

### Nature of Action

     1. This lawsuit arises out of fraudulent conduct by defendants in inducing plaintiff to invest at least $550,000, into a business pursuant to the United States EB-5 Immigrant Investor Program with the promise of obtaining an immigration visa for himself. Plaintiff brings this claim for, inter alia, breach of contract and fraud and seeks money damages and rescission with respect to his investment.

### Parties

     2. Plaintiff, Muhan Cui ("Cui") is a natural person residing in the State of New Jersey, County of Bergen and the Borough of Edgewater. Cui is a citizen of the People's Republic of China and a lawful permanent resident of the United States.

3. Upon information and belief, defendant, Richard Xia ("Xia") is a natural person residing in the State of New York.

4. Upon information and belief, defendant, Fleet New York Metropolitan Regional Center LLC is a limited liability company duly organized and existing under the laws of the State of New York, with a principal place of business in the State of New York, County of Queens.

5. Upon further information and belief, until on or around August 20, 2015, Fleet New York Metropolitan Regional Center LLC was known as Federal New York Metropolitan Regional Center LLC (Fleet New York Metropolitan Regional Center LLC and Federal New York Metropolitan Regional Center LLC are referred to herein collectively as "New York Metro").

6. Upon information and belief, EMMCO NQMC, L.P. ("EMMCO"), is a limited partnership duly organized and existing under the laws of the State of New York, with a principal place of business in the State of New York, County of Queens. Upon information and belief, EMMCO NQMC is listed on the website of the Secretary of State of the State of New York as "inactive."

7. Upon information and belief, Xia is the President of Fleet Financial Group, Inc. ("Fleet"). Upon further information and belief, Fleet is engaged in the business of real estate development.

2

8. Upon information and belief, New York Metro and Fleet share offices at 136-20 38th Avenue Ste. 10-F, Flushing, New York 11354. Upon further information and belief, EMMCO has offices in Flushing, New York.

### Jurisdiction and Venue

9. This Court has subject matter jurisdiction over this action pursuant to: a) 28 U.S.C. §1332(a)(2) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and a citizen or subject of a foreign state (and is not between citizens of a State and citizens of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State); and b) 28 U.S.C. 1331, as it arises under the federal securities laws and has supplemental jurisdiction over plaintiff's state law claims because they form part of the same case or controversy as the federal law claims.

10. Venue is proper with respect to this action in the Eastern District of New York pursuant to 28 U.S.C. §1391(b)(1).

### Factual Background

11. Congress created the EB-5 program in 1990 to stimulate the United States economy through job creation and capital investment by foreign investors ("EB" stands for "Employment Based"). In 1992, Congress created the Immigrant Investor Program, also known as the "Regional Center Program." This sets aside EB-5

visas for participants who invest in commercial enterprises associated with reginal centers approved by the United State Customs and Immigration Service ("USCIS") based on proposals for promoting economic growth. In order to qualify for an EB-5 visa, a foreign applicant must invest $500,000 or $1 million (depending on the type of investment) in a commercial enterprise approved by USCIS. Once the foreign applicant has made the investment, he or she may apply for conditional permanent resident status (a/k/a temporary green card or conditional green card), which is good for two years. If the investment creates or preserves at least ten jobs during those two years, the foreign applicant may apply to have the conditions removed from his or her green card. The applicant can then live and work in the U.S. permanently.

12.  Cui is a native of the People's Republic of China.

13.  Plaintiff developed an interest in obtaining authorization to live and work in the United States on a permanent basis in the United States. This authorization is commonly known as a green card.

14.  In 1992, Congress created the Immigrant Investor Program, also known as the Regional Center Program. The Regional Center Program sets aside EB-5 visas for participants who invest in commercial enterprises associated with regional centers approved by the United States Customs and Immigration Service ("USCIS") based on proposals for promoting economic growth. In other words,

the investments are typically administered by regional centers throughout the United States. The investments are typically made in limited partnerships or limited liability companies whose investments satisfy certain criteria and result in the creation or preservation of United States jobs. To qualify for the program, the foreign investors must invest $1 million ($500,000 if in a rural area or area of high unemployment) and thereby create at least ten full-time jobs for United States workers.

15. In or around September, 2010, New York Metro was duly authorized by USCIS as a regional center. Consequently, investors in a commercial enterprise associated with New York Metro may be eligible for an EB-5 visa and, ultimately, a temporary green card and a permanent green card.

16. Upon information and belief, New York Metro formed EMMCO, or had EMMCO formed, in or around December, 2010 pursuant to the New York Revised Limited Partnership Act by filing a Certificate of Limited Partnership with the New York Secretary of State.

17. Upon information and belief, New York Metro is the managing general partner of EMMCO and the only general partner of EMMCO.

18. Xia is the President and Chief Executive Officer of New York Metro.

19. As the President of New York Metro, which is in turn the managing general partner of EMMCO, Xia controls the affairs of EMMCO.

20. The private placement memorandum of EMMCO (the "PPM") provides, at pages (i)-(iii) and 1-6 thereof, that EMMCO was formed to finance a portion of a real estate development project known as the "Eastern Mirage Project" (the "Project") through a loan to a real estate firm associated with New York Metro, namely Fleet Financial.

21. The Project is a mixed-use real estate development in Flushing, Queens that is intended to include medical office, hospitality, conference, spa and fitness, dining and residential uses.

22. EMMCO was to lend money to finance approximately 50% of the costs of Phase II of the Project, involving completion of the North Queens Medical Center. The North Queens Medical Center is intended to offer over 100,000 square feet of Class-A office space to health care providers.

23. The amount to be financed by EB-5 Immigrant Investor Capital was between $500,000 and $11,000,000, depending on the number of limited partnership interest, i.e. "Units", sold with respect to the Project to EB-5 investors.

24. In other words, capital to finance Phase II of the Project the Hotel Project would be raised from EB-5 investors, all of whom would be foreign investors.

25. The EB-5 investors would in turn acquire Units in EMMCO, with each such Unit intended to be a Qualifying Investment under the EB-5 program.

26. Upon information and belief, and pursuant to page (ii) of the PPM for the Project, the maximum number of Units that can be sold with respect to the Project is 22, at a per unit price of $500,000, for a total amount of capital contributions from limited partners of $11,000,000 (plus a per Unit processing fee of $50,000).

27. In connection with undertaking the following, plaintiff ultimately became a limited partner in EMMCO:

(i) completing and executing, in or around April 15, 2011, a subscription agreement and investor questionnaire;

(ii) executing, in or around April 15, 2011, a signature page to the limited partnership agreement of EMMCO (the "EMMCO agreement");

(iii) making a capital investment in EMMCO in the amount of $500,000, along with a "processing fee" in the amount of $50,000 which, according to page (iii) of the PPM, was "intended to be used for expenses incurred in preparation and marketing of this Offering."

28. On or around April 15, 2011, plaintiff duly paid the $550,000 to EMMCO by wire transfer to East West Bank, N.A.

29. In addition to receiving a green card for himself, Cui intended to receive a reasonable return on his investment in the Project.

30. The PPM provided that the loan from EMMCO to Fleet would mature in five years from the date of the first advance thereunder.

31. The PPM further provided that the "Borrower", i.e. Fleet, intended to repay the loan at maturity with the proceeds of long-term financing or from other sources.

32. Pursuant to the PPM, net proceeds (if any) realized from the distribution of profit realized from the investment, sale, exchange or other disposition of the business of EMMCO was to be allocated 100% to the limited partners, up to the amount of their original capital contribution.

33. Thereafter, profits would be distributed 99% to New York Metro, and 1% to the limited partners of EMMCO.

34. Interest income from any investment by EMMCO would be distributed 99% to New York Metro and 1% to the limited partners of EMMCO.

35. The PPM states, at page 2 thereof, that the "Partnership" [i.e. EMMCO] anticipates that the North Queens Medical Center will be completed and be generating income and creating jobs by the third or fourth quarter of 2013.

36. To date, fully five years after the fourth quarter of 2013, the North Queens Medical Center has not opened.

37. Plaintiff has received no distributions from EMMCO.

38. Since becoming a limited partner of EMMCO, plaintiff has received no information from defendants with respect to the progress, or lack thereof, of the Project, including tenants, estimated completion dates, financing or refinancing of the Project and the market for the Project.

39. Plaintiff has received no accounting of the financial results of EMMCO.

40. Plaintiff has made numerous requests to defendants to withdraw from EMMCO and for the return of his investment, to wit the $500,000 that he paid for a unit in EMMCO.

41. Notwithstanding plaintiff's repeated requests for the return of his partnership investment, defendants have ignored his request and have refused to return plaintiff's partnership investment.

## AS AND FOR A FIRST CAUSE OF ACTION

42. Plaintiff repeats and realleges paragraphs 1 through 41 hereof as if more fully set forth herein.

43. To date, Cui has received no return on his investment in EMMCO.

44. Defendants have refused to return plaintiff's investment to him.

45. Defendants represented to plaintiff that the loan from EMMCO to Fleet would mature in five years from the date of the first advance thereunder and would be refinanced, that the North Queens Medical Center would be completed and be generating income and creating jobs by the third or fourth quarter of 2013 and that profits and interest income would be distributed to the limited partners.

46. Defendants made the foregoing representations with knowledge of their falsity or with reckless disregard as to their falsity.

47. The foregoing representations were material with respect to plaintiff's decision to invest in EMMCO.

48. Plaintiff reasonably relied upon the foregoing representations to his detriment.

49. By virtue of the foregoing, plaintiff has been damaged in an amount to be determined at trial, but in no event less than $550,000.

AS AND FOR A SECOND CAUSE OF ACTION

50. Plaintiff repeats and realleges paragraphs one through 49 hereof as if more fully set forth herein.

51. As the President of the general partner of EMMCO, Xia had a fiduciary obligation to deal honestly, fairly, equitably and in good faith toward Cao.

52. As general partner of EMMCO, New York Metro had a fiduciary obligation to deal honestly, fairly, equitably and in good faith toward Cui.

53. To date, fully five years after the fourth quarter of 2013, the North Queens Medical Center has not opened.

54. Plaintiff has received no distributions from EMMCO.

55. Since becoming a limited partner of EMMCO, plaintiff has received no information from defendants with respect to the progress, or lack thereof, of the Project, including tenants, estimated completion dates, financing or refinancing of the Project and the market for the Project.

56. Plaintiff has received no accounting of the financial results of EMMCO.

57. Defendants represented to plaintiff that the loan from EMMCO to Fleet would mature in five years from the date of the first advance thereunder and would be refinanced, that North Queens Medical Center will be completed and be generating income and creating jobs by the third or fourth quarter of 2013 and that profits and interest income would be distributed to the limited partners.

58. Notwithstanding plaintiff's repeated requests for the return of his partnership investment, defendants have ignored his request and have refused to return plaintiff's partnership investment.

59. By reason of the foregoing, defendants breached their fiduciary duty to plaintiff.

60. By reason of the foregoing, plaintiff has suffered damages in an amount to be determined at trial, but in no event less than $550,000.

<u>AS AND FOR A THIRD CAUSE OF ACTION</u>

61. Plaintiff repeats and realleges paragraphs 1 through 60 hereof as if more fully set forth herein.

62. By reason of the foregoing, the Court should grant rescission of the subscription agreement and the EMMCO agreement with respect to plaintiff's interest therein.

<u>AS AND FOR A FOURTH CAUSE OF ACTION</u>

63. Plaintiff repeats and realleges paragraphs 1 through 62 hereof as if more fully set forth herein.

64. Xia executed the EMMCO agreement as "Original Partner."

65. New York Metro executed the limited partnership agreement as the "General Partner."

66. Plaintiff performed under the limited partnership agreement.

67. By reason of the foregoing, defendants breached the EMMCO agreement.

68. By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial, but in no event less than $550,000.

12

## AS AND FOR A FIFTH CAUSE OF ACTION

69. Plaintiff repeats and realleges paragraphs 1 through 68 as if more fully set forth herein.

70. Xia executed the limited partnership agreement as "Original Partner."

71. New York Metro executed the limited partnership agreement as the "General Partner."

72. The EMMCO agreement provides, in part, that it "shall be governed by and construed in accordance with the internal substantive laws of the State of New York .…"

73. Implicit in every contract governed by the substantive laws of the State of New York is an implied covenant of good faith and fair dealing.

74. Defendants have provided no distributions or returns to plaintiff with respect to this investment.

75. Fully five years after the fourth quarter of 2013, the North Queens Medical Center has not opened.

76. Defendants have refused to provide any information to plaintiff with respect to the business, financial and other operations of EMMCO.

77. Defendants have acted in such a manner as to deprive plaintiff of the right to receive benefits under the EMMCO agreement, namely a return on his investment.

78. By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial, but in no event less than $550,000.

## AS AND FOR A SIXTH CAUSE OF ACTION

79. Plaintiff repeats and realleges paragraphs 1 through 78 hereof as if more fully set forth herein.

80. Page 1 of the Private Placement Memorandum contains the language "THE SECURITIES OFFERED HEREBY" and thereby refers to the limited partnership interests as "Securities."

81. Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

(i) with scienter, employed devices, schemes, or artifices to defraud;

(ii) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(iii) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

82. By engaging in the conduct described above, defendants violated Section 17(a) of the Securities Act of 1933, 15 U.S.C. §77q(a).

83. By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial, but in no event less than $550,000.

AS AND FOR A SEVENTH CAUSE OF ACTION

84. Plaintiff repeats and realleges paragraphs 1 through 83 hereof as if more fully set forth herein.

85. Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instruments of interstate commerce or by use of the mails, with scienter:

(i) employed devices, schemes, or artifices to defraud;

(ii) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(iii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

86. By engaging in the conduct described above, defendants violated Section 10(b) of the Securities Act of 1933, 15 U.S.C. 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. §240.10b-5.

15

87. By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial, but in no event less than $550,000.

### AS AND FOR AN EIGHTH CAUSE OF ACTION

88. Plaintiff repeats and realleges paragraphs 1 through 87 hereof as if more fully set forth herein.

89. As General Partner of EMMCO and pursuant to the terms of the limited partnership agreement, the New York Partnership Law and any applicable common law, New York Metro owes a fiduciary duty to plaintiff.

90. Plaintiff has requested true and accurate information regarding the business and financial affairs of EMMCO and the value of his membership interest.

91. Defendants have refused to provide such information.

92. Plaintiff has no adequate remedy at law.

93. Plaintiff is entitled to an accounting to determine the value of his membership interest, the propriety of distributions made or not made to defendants, the existence of self-dealing, the propriety of payments made by EMMCO and New York Metro to Xia and/or other entities controlled by or affiliated with Xia and the accuracy of EMMCO's financial statements.

WHEREFORE, plaintiff Muhan Cui demands judgment as follows:

A. On the first cause of action, against defendants Richard Xia, EMMCO NQMC, L.P. and Fleet New York Metropolitan Regional

16

Center LLC, jointly and severally, damages in an amount to be determined at trial, but in no event less than $550,000;

B. On the second cause of action, against defendants Richard Xia, EMMCO NQMC, L.P. and Fleet New York Metropolitan Regional Center LLC, jointly and severally, damages in an amount to be determined at trial, but in no event less than $550,000;

C. On the third cause of action, against defendants Richard Xia, EMMCO NQMC, L.P. and Fleet New York Metropolitan Regional Center LLC, granting rescission of the subscription agreement and limited partnership agreement with respect to plaintiff's interest therein.

D. On the fourth cause of action, against defendants Richard Xia, EMMCO NQMC, L.P. and Fleet New York Metropolitan Regional Center LLC, jointly and severally, damages in an amount to be determined at trial, but in no event less than $550,000;

E. On the fifth cause of action, against defendants Richard Xia, EMMCO NQMC, L.P. and Fleet New York Metropolitan Regional Center LLC, jointly and severally, damages in an amount to be determined at trial, but in no event less than $550,000;

F. On the sixth cause of action, against defendants Richard Xia, EMMCO NQMC, L.P. and Fleet New York Metropolitan Regional Center LLC, jointly and severally, damages in an amount to be determined at trial, but in no event less than $550,000;

G. On the seventh cause of action, against defendants Richard Xia, EMMCO NQMC, L.P. and Fleet New York Metropolitan Regional Center LLC, jointly and severally, damages in an amount to be determined at trial, but in no event less than $550,000;

H. On the eighth cause of action, against defendants Richard Xia, EMMCO NQMC, L.P. and Fleet New York Metropolitan Regional Center LLC, judgment ordering an immediate accounting and judgment against all defendants in an amount to be determined at such accounting;

I. Interest, costs and disbursements of this action;

J. Legal fees; and

K. Such other and further relief as the Court shall deem just and proper.

Dated: New York, New York
       January 31, 2019

Yours, etc.,

MOSS & KALISH, PLLC

By:

David B. Gelfarb
Gelfarb@mosskalish.com
Attorneys for Plaintiff
122 E. 42nd Street Ste. 2100
New York, New York 10168
(212) 867-4488

**JURY DEMAND**

Plaintiff demands trial by jury of all claims triable by jury.

Dated: New York, New York

January 31, 2019

Yours, etc.,

MOSS & KALISH, PLLC

By: _____
David B. Gelfarb
Gelfarb@mosskalish.com
Attorneys for Plaintiff
122 E. 42nd Street Ste. 2100
New York, New York 10168
(212) 867-4488